UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
BOSE CORPORATION,             )
                              )
               Plaintiff,     )
                              )
        v.                    )  CIVIL ACTION
                              )  NO. 09-11439-WGY
                              )
SDI TECHNOLOGIES, INC.,       )
IMATION CORP.,                )
MEMOREX PRODUCTS, INC.,       )
3XM CONSULTING, LLC, and      )
D.P.I., INC.,                 )
                              )
               Defendants.    )
                              )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    July 10, 2012


I.   **INTRODUCTION**

Bose Corporation ("Bose") commenced this action in August

2009, against SDI Technologies, Inc. ("SDI"), Imation Corp.

("Imation"), Memorex Products, Inc. ("Memorex")[1], 3XM Consulting,

LLC ("3XM"), and D.P.I., Inc. ("DPI"), for allegedly infringing

U.S. Patent No. 7,277,765 ("the '765 patent"), titled Interactive

_____

[1] Since 2006, Memorex Products, Inc. is a wholly owned
subsidiary of Imation, and the two are collectively referred to
as "Imation."

<u>Sound Reproducing</u>, claims 1-3, 13, 16-25, 33, 35, and 37-42.   <u>See</u>
Compl. Patent Infringement Demand Jury Trial, ECF No. 1.   Bose
owns the '765 patent, although the U.S. Patent and Trademark
Office presently is reexamining the patent at the request of
counsel for Imation and DPI.   Currently, the patent reexamination
is wending its way through an excruciatingly slow administrative
appeals process with an interim conclusion that the patent is
invalid.   In light of this reexamination, the judge to whom this
case had been originally assigned stayed this proceeding as a
matter of judicial economy.

More recently, SDI, Imation, and DPI (collectively "the
Defendants")[2] filed a joint motion for summary judgment arguing
that the accused products cannot infringe as matter of fact and
law after this Court's claim construction, that they cannot be
found to have the requisite intent for indirect infringement as a
matter of fact and law, and requesting summary judgment on the
priority date of several claims.

**A.   Procedural Posture**

The asserted claims are involved in an <u>inter partes</u>
reexamination in the U.S. Patent and Trademark Office.[3]   Once the

---

[2] Defendant 3XM is not a party to this motion for summary
judgment. 3XM has not filed any pleadings or motions with the
Court since October 2010.   <u>See</u> 3XM's Notice Assent Joint
Stipulation Extend Dep. Deadline Mediation Deadline, ECF No. 114.

[3] The status of, and the documents related to, this
reexamination are accessible through the PTO Patent Application

case was reassigned, this Court denied the Defendants' motion for summary judgment of invalidity, ECF No. 150, and lifted the stay of discovery.[4]

On January 10, 2012, the Defendants filed the current motion for summary judgment, Defs.' Joint Mot. Summ. J., ECF No. 239, along with a supporting memorandum and a statement of undisputed material facts, Defs.' Joint Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 242; Statement Undisputed Material Facts, ECF No. 243. Bose opposed the motion on January 31, 2012. Bose Corp.'s Opp'n Defs.' Second Joint Motion Summ. J.("Pl.'s Opp'n"), ECF No. 267. Bose also submitted a statement of controverted and supplemental facts. Pl.'s Local Rule Statement Controverted Supplemental Facts ("Pl.'s Facts"), ECF No. 262. The Defendants filed a reply brief on February 8, 2012, Defs.' Joint Reply Supp. Mt. Summ. J., ECF No. 269, together with a response to Bose's statement of controverted and supplemental facts, Defs.' Resp. Pl.'s Statement Controverted Supplemental Facts, ECF No. 270.

Defendants' motion for summary judgment was heard on

_____

Information Retrieval system (PAIR), Application No. 95/001,260. According to PAIR, the parties participated in an administrative appeal hearing on May 2, 2012.

[4] Lifting the stay is hardly free from controversy and reasonable minds may differ. As a general matter, this Court is skeptical of stays to wait for the action of another court or administrative agency. This Court will rarely grant a stay over a party's opposition. As here.

February 14, 2012, and the Court took the matter under
advisement.  Clerk's Notes, Feb. 14, 2012.

### 1.   Claim Construction

This Court held a <u>Markman</u> hearing on November 14, 2011, and
entered a memorandum of decision constructing the claims on
December 12, 2011.  Mem. Decision Patent Claim Construction
("<u>Markman</u> Mem."), ECF No. 210 (also available at <u>Bose Corp.</u> v.
<u>SDI Tech., Inc.</u>, 828 F. Supp. 2d 415 (D. Mass. 2011)).  Bose
moved for reconsideration and clarification of the Court's
decision, Bose Corp.'s Mot. Recons. Clarification Ct.'s Mem.
Decision Patent Claim Constr., ECF No. 253; ECF No. 254, which
was opposed by SDI, Defs.' Mot. Strike Bose's Mot. Reconsider
Claim Constr., ECF No. 256, and denied by this Court on January
20, 2012, Elec. Order, Jan. 20, 2012.

At the <u>Markman</u> hearing, Bose opposed the Court's adopted
construction of "interface" specifically by arguing that it would
preclude certain claims.  <u>See</u> Tr. <u>Markman</u> Hr'g, ECF No. 200.  The
Defendants now claim that the claim construction precludes all
infringement claims, which, of course, Bose disputes.

### B.   Facts

The devices accused of infringement are speaker docks that
connect with Apple iPods, iPhones, or iPads (collectively called
"iDevices").  Bose has accused one hundred forty-four products.
Defs.' Mem. 3.  One hundred forty-three of the one hundred forty-

four products (and every product of defendants Imation and DPI) are speakers with a "30 pin connector" that can connect with an iPod.  <u>Id.</u>  These one hundred forty-three products are collectively called the "Common Products".  <u>Id.</u>  One SDI product, the "AirPlay product" or "iW1", can connect to an iPod wirelessly or through a cable.  <u>Id.</u>

### 1.   U.S. Patent No. 7,277,765

The patent in question, U.S. Patent No. 7,277,765, has four independent claims: claims 1, 25, 35, and 37.  Decl. Matthew J. Himmich Supp. Defs.' Mot. Summ. J. Asserted Claims '765 Patent Are Invalid Being Obvious, Ex. B, ECF No. 131-3; Pl.'s Facts ¶ 1; Decl. Tal Kedem Supp. Pl' Bose Corp.'s Opp'n Defs.' Second Joint Mot. Summ. J. ("Decl. Kedem"), Ex. 1, Expert Report Martin E. Kaliski, PhD Nov. 22, 2011 ("Kaliski Report") ¶ 30, ECF No. 265-1 - 265-3.  Bose is alleging infringement of claims 35 and 37-42 against defendants DPI, Imation, and Memorex, and all of SDI's products, except for the iW1.  Pl.'s Facts ¶¶ 2-3.  As to SDI's iW1 product, Bose is alleging infringement of claims 1-2, 13, 16-19, 21-23, 37-40, and 42.  <u>Id.</u> ¶ 4.

Each asserted independent claim of the '765 patent requires an "audio source device."  '765 Patent at claims 1, 25, 35, 37.  Bose admits that the Defendants' products must be combined with an "audio source device" in order to directly infringe the '765 patent.  Pl.'s Facts ¶ 44.  Each claim of the '765 patent also

requires some form of an "interface."  See '765 Patent.  None of
the accused products contains or includes an "audio source
device."  Pl.'s Facts ¶ 49.  The interface unit in Figure 2 of
the '765 patent receives digital audio signals from the computer
and converts the digital signals into analog audio signal. '765
Patent, col. 4, ll. 32-55.

In relevant parts, claim 1 of the patent is an audio
reproduction system comprised of an audio source device, an
enclosure with an interface and powered speaker, and a remote
control.  Id. col. 11, l. 62 - col. 12, l. 22.  Claim 25 includes
an audio reproduction system, and interface unit operably coupled
to the sound reproduction device, a music storage device and a
remote control.  Id. col. 13, l. 33 - col. 14, l. 3.  Claim 35 is
an audio reproduction device with a sound reproduction device
(including an enclosure, speaker and radio tuner), an interface
device coupled to the sound reproduction device, an audio source
that "removably connect[s] to the sound reproduction device via
the interface device" and a remote control.  Id. col. 14, ll. 33-
63.  In claim 37, the sound reproduction device is an enclosure
with "an interface module at least partially integrated within
the enclosure."  Id. col. 15, l. 1 - col. 16, ll. 5.

### 2.  Claim Construction

This Court conducted a Markman hearing to construe certain
terms in the '765 Patent.  See Tr. Markman Hr'g; Clerk's Notes,

Nov. 14, 2011.  In the <u>Markman</u> order, the Court gave ordinary meaning to a number of terms:  "including," "signal," "command," "automatically update," "audio source device," "music storage device," and "computer."  <u>Markman</u> Mem. 17-21.  The Court declined to construe the phrase "an analog representations of the respective music files."  <u>Id.</u> at 22.  The Court construed "a display for displaying a user interface" as "a display capable of displaying."  <u>Id.</u> at 13.  The Court construed the term "metadata" as "data containing identifying characteristics."  <u>Id.</u> at 15. The Court construed a "music file" as "a recorded unit of sound." <u>Id.</u> at 17.

Most importantly to this case, the Court construed "interface" as "circuitry that converts a digital audio signal from an audio source to an analog audio signal and transmits digital control commands."  <u>Id.</u> at 6.  The term "interface" appears, either explicitly or by reference, in every claim of the '765 Patent.  "Interface" appears in claims 1-24, "interface unit" appears in claims 25-34, "interface device" appears in claims 35-36, and "interface module" appears in claims 37-38. <u>See</u> <u>id.</u>  The Court was unpersuaded by Bose's argument that the interface was just a "connection" and looked to the specification, prosecution history, and extrinsic evidence to define the term.  <u>Markman</u> Mem. 4-12.

The specification identifies the "interface" and depicts and

describes an "interface unit" in more detail.  '765 Patent, Fig.
3, col. 4. ll. 15-31.  The interface unit detailed in Figure 3
"typically [has] three implementation arrangements."  '765
Patent, col. 3, ll. 60-61.  One arrangement includes the
interface unit inside a computer system.  <u>Id.</u> col. 4, ll. 61-62.
Another is as an "intermediate, separate unit" which uses cables
to connect to a computer, and the sound reproduction device.  <u>Id.</u>
col 5, ll. 4-10.  A third includes the interface unit in the
sound reproduction device.  <u>Id.</u> col. 5, ll. 11-16.  Notably, each
of these three arrangements appears to treat the interface unit
as a discrete device.

The Court has construed each of the terms "interface unit,"
"interface device," and "interface module" as "a structure that
includes the interface."  <u>Markman</u> Mem. 12.  Thus, each of these
terms is a structure that includes "circuitry that converts a
digital audio signal from an audio source to an analog audio
signal and transmits digital control commands."  <u>See</u> <u>id.</u> at 6.
These are "three similar, yet different structures with different
implementation schemes."  <u>Id.</u> at 13.  The implementation schemes
are those articulated in claims 25, 35, and 37.  <u>See</u> '765 Patent,
col. 13-15.  The Court's construction of these terms is buoyed by
the detailed description of the interface unit in the
Specification in Figure 3.



FIG. 3

U.S. Patent

Oct. 2, 2007

Sheet 3 of 33

US 7,277,765 B1

Figure 3 depicts an interface unit (54), connected by a signal line to a computer (20), and also connected to a sound reproduction device (10), by way of analog and digital signal lines. '765 Patent, Fig. 3, col. 4, ll. 15-31.  The interface unit includes a digital-to-analog converter (60),[5] and an analog to digital convertor (70).  Id.  The interface unit also includes logic circuitry (58) that "transmits digital controls commands"

---

[5] According to Bose's expert Dr. Kaliski, a "digital-to-analog converter takes the digital representation of the audio and converts it back to an analog signal that can be used to drive a speaker."  Kaliski Report ¶ 24.

received from the sound reproduction device (10).  Id.  Thus, the
'765 specification depicts Figure 3 as practicing the interface
unit, module, or device in the '765 Patent as construed by this
Court.

Bose has argued that this Court explicitly rejected the
Defendants' argument that the interface module, unit and device
need be "discrete."  Pl.'s Opp'n 5.  To the extent that not
adopting the word "discrete" caused confusion and unnecessary
filings by the parties, the Court is regretful.  When the Court
stated "I don't think I need discrete" in the Markman hearing,
Tr. Markman Hr'g at 13:11-12, the intimation was that the
construction "structure including interface" defining the
interface unit, module, and device was something singularly
physical, not defined on paper as different pieces of separate
devices.  Bose's understanding of the Court's claim construction
of interface module, unit, and device is incorrect.

### 3.  Facts Relating to Intent

SDI, Imation, and DPI each claim that the undisputed facts
show that they could not have the requisite intent to infringe
Bose's patent.  Defs.' Mem. 14.  It is undisputed that Bose's
damages expert testified that SDI "had an invalidity opinion and
believed that the patent was invalid," that "DPI had an
invalidity opinion and [DPI's President and CEO] testified to his
certainty of the invalidity of the patent," and that Imation

10

"also had an invalidity opinion." Pl.'s Facts ¶ 53. On November 12, 2009, Matthew Himich ("Himich") of Thompson Coburn LLP filed with the Patent Office a request for reexamination of the '765 patent – requesting reexamination of every claim of the patent on behalf of DPI and Imation. Id. ¶ 54.

On January 13, 2010, the Patent Office rejected all claims of the '765 patent, as being either anticipated or made obvious by prior art. Pl.'s Facts ¶ 58. On June 7, 2010, the Patent Office issued an Action Closing Prosecution ("ACP") in the reexamination and reaffirmed its rejection of every claim of the '765 patent. Id. ¶ 61. On July 7, 2010, Bose requested that the Patent Office reconsider and withdraw its rejection, and Bose submitted further arguments for the Patent Office's consideration. Id. ¶ 64. After a "Final Decision" by the Patent Office, Bose appealed to the Board of Patent Appeals and Interferences. Id. ¶ 67. Bose does not dispute that Imation, Memorex, and DPI are aware of the Right to Appeal Notice/Final Decision. Id. ¶ 66. Himich also testified that he spoke with Imation, Memorex, and DPI employees during the reexamination proceedings, although Bose disputes how many times he spoke with them. Id. ¶ 68.

Bose asserts that SDI, Imation, and Memorex have been aware of the infringement allegations since at least December 2008, Pl.'s Facts 35, 39, and DPI has been aware of the infringement

since at least January 2009, id. at 42.   Bose submitted instruction manuals from each of the Defendants, which show that their accused infringing products can be combined with an iPod, iPhone, or iPad via the docking capability and instruct users to combine their iDevice with the accused products via the 30-pin connector dock, or in the case of iW1, via either a USB cable or wireless network adapter.   Pl.'s Facts 36, 39, 42; e.g., Decl. Tal Kedem, Ex. 8, SDI iP9 Manual, ECF No. 265-10 ("Insert an iPhone or iPod into the dock with proper insert . . . .").   Representatives of each Defendant also testified that they expected the alleged infringing products to be used with iDevices.   Pl.'s Facts 38, 41, 43-44.

### a.   Imation

On December 16, 2008, Bose sent a letter to Eric Levinson ("Levinson"), Imation's chief in-house patent counsel from 2000 until March 2011, alleging infringement of the '765 patent.   Id. ¶¶ 70-71.   In the letter, Bose alleged that one Imation product infringed the '765 patent.   Id. ¶ 73.   Levinson testified in his deposition that he made internal and external inquiries regarding the product mentioned in Bose's letter.   Id. ¶ 74.   Levinson learned that the product listed in Bose's December 16, 2008 letter was discontinued, and he communicated that information to Bose.   Id. ¶ 75.   On January 20, 2009, Bose informed Levinson that it believed other Imation products infringed the '765

patent.  Id. ¶ 76.  Levinson testified that he then conducted an investigation regarding Bose's allegations, but Bose disputes whether it was an investigation.  Id. ¶ 77.  Levinson contacted outside counsel, patent attorney Kelly Fitzgerald ("Fitzgerald") of Shumaker & Sieffert, to evaluate Bose's January 20, 2009 allegations.  Id. ¶ 79.  Imation claims to have received oral advice along with a written opinion from Fitzgerald that the products did not infringe, and that Imation relied on this opinion.  Id. ¶¶ 80-82.

### b.  DPI

William Fetter ("Fetter"), DPI's President and CEO, claims that DPI began selling the products that Bose accuses of infringement in 2006.  Id. ¶ 87.  Fetter reports that DPI began developing these products in 2005.  Id. ¶ 86.  Fetter testified that DPI had not heard of the '765 patent before Fetter received notice of the patent from Bose "in late 2008 or early 2009."  Id. ¶¶ 87-88.  On February 17, 2009, Fetter contacted a DPI engineer, Lee Ka Wing ("Lee").  Id. ¶ 89.  Fetter sent Bose's letter to Lee and asked him to review Bose's allegations.  Id. ¶ 90.  Lee emailed Fetter back, in part explaining that the patent involved a computer and that the iPod's used by DPI's products are not a computer.[6]  Id. ¶ 91.  Fetter responded to Lee's email and stated

---

[6] Bose claims that all iDevices are computers.  This Court declined to construct the term "computer" and in this case the analysis need not turn on that definition.

"I sure did not see how their patent was in any way infringed by our products.  I am glad you confer [sic] with my thinking."  Id. ¶ 92.  On February 21, 2009, counsel for Bose informed Fetter that "they are claiming that the iPod is the computer" and that DPI allegedly infringes because DPI's remote controls operate the iPod.  Id. ¶ 93.  On February 21, 2009, Lee told Fetter that the computer in the '765 patent is connected to a network and he is sure the iPod cannot be part of the network.  Id. ¶ 96.  At some point, DPI retained Himich of Thompson Coburn LLP.  Id. ¶ 97.

The parties dispute whether Himich gave DPI a legal opinion that the patent was invalid, and whether DPI relied on Himich's opinion.  Id. ¶¶ 98-99.  Himich filed a request for reexamination of all the claims of the '765 patent, setting forth his reasons why every claim of the '765 Patent is either anticipated or made obvious by prior art.  Id. ¶ 100.

### c.   SDI

SDI received a letter from Bose dated December 10, 2008 stating that the '765 patent "applies" to several SDI "iHome" products.  Id. ¶ 102.  During a meeting with Bose, SDI identified U.S. Patent No. 6,026,150 ("the Frank patent").[7]  Id. ¶ 104.

---

[7] SDI claims that the Frank patent, combined with prior art, would invalidate the claims of the '765 Patent, and that SDI informed Bose representatives in a March 2009 meeting.  See Pl.'s Facts ¶¶ 103-05.  Bose objects to the admission of evidence or communications from that meeting, claiming that counsel agreed in

After the matter was not resolved at the March 26, 2009 meeting, SDI commissioned and then received a written opinion by George E. Oram, Jr. ("Oram") of Arent Fox LLP, dated May 22, 2009, on the subject of the validity of the patent.  Id. ¶ 106.  Oram opined that all of the asserted claims of the '765 patent were invalid based on the combination of the Frank patent and U.S. Patent No. 6,563,769 (the "Van Der Muelen patent").  Id. ¶ 107.  Bose disputes that SDI relied on this opinion.  Id. ¶ 108.

The Frank patent was subsequently combined with the Van Der Muelen patent in a reexamination of the '765 patent to reject all of the claims of the patent, along with two other rejections based on other prior art.  Id. ¶ 109.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits" show that "no genuine issue as to any material fact" exists.  Fed. R. Civ. P. 56(c).  When determining a motion for summary judgment, the court must view the facts and draw all reasonable inferences in favor of the nonmoving party.  Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008).  An issue of fact is genuine if there exists a sufficient

---

writing that the communications are protected by Federal Rule of Evidence 408 and Local Rule 16.4.  Id. ¶ 103.

evidentiary basis on which the trier of fact could find for the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1985).  A fact is "material" if it will affect the outcome of the case under the applicable law.  Id.  Save as to facts admitted by both parties, courts must disregard all evidence - even if unopposed - which the jury is free to reject, i.e., all evidence upon which a party bears the burden of proof.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

"Summary judgment is as available in patent cases as in other areas of litigation."  Tokai Corp v. Easton Enters., Inc., 632 F.3d 1358, 1366 (Fed. Cir. 2011) (quoting Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991)); cf. In re One Star Class Sloop Sailboat Built in 1930 with Hull Number 721, Named "Flash II", 517 F. Supp. 2d 546, 555 (D. Mass. 2007) (noting the overuse of summary judgment by federal courts). Thus, summary judgment may be granted when a fair-minded jury could reach only one conclusion: in favor of the moving party.

**B.   Literal Infringement**

The interpretation and construction of claims in a patent "which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 970–971 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996); Bailey v. Dart Container Corp. of Mich., 980 F. Supp. 560, 565, on reconsideration in part, 980

16

F. Supp. 584 (D. Mass. 1997) (Lindsay, J.).  "To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796 (Fed. Cir. 1990) (citing Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1259 (Fed. Cir. 1989)).

Courts determine patent infringement by first learning the meaning of the claims from the relevant patent documents, and then by applying the claims to the accused structures.  Id. at 796 (citing Caterpillar Tractor Co. v. Berco, S.P.A., 714 F.2d 1110, 1114 (Fed. Cir. 1983)).  Generally speaking, infringement is a question of fact.  Popeil Pasta Prods., Inc. v. Creative Tech. Corp., 56 F.3d 84, at *4 (Fed. Cir. 1995) (unpublished table decision) (citing SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 376 (Fed. Cir. 1983)).  Where the parties do not dispute relevant facts but instead dispute the construction, the question may be amenable to summary judgment. MBO Labs., Inc. v. Becton, Dickinson & Co., 783 F. Supp. 2d 216, 220-21 (D. Mass. 2011) (Stearns, J.), aff'd, No. 11-1446, 2012 WL 1608687 (Fed. Cir. May 9, 2012) (citing Athletic Alts., Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996)); see also Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1453 (Fed. Cir. 1998).

It is undisputed that Defendants' manufacture, sale, offer for sale, or importation of the accused products into the United States standing alone, i.e., without any audio source device, is not an act of direct infringement of the '765 patent.  Pl.'s Fact ¶ 45.  Instead, Bose claims that the Defendants indirectly infringed the '765 patent by contributory infringement and by inducing third-parties to infringe the patent.  Id. ¶ 52; First Am. Compl. Patent Infringement Demand Jury Trial 4-7, ECF No. 45.

In its original infringement contentions, Bose argued that the "interface" in Defendants' products was the "dock" on the top of the products that received the iDevice.  E.g., Pl.'s Prelim. Infringement Disclosure, Ex. 1 at 6, ECF No. 69-2.  Following the November 14, 2011 claim construction hearing, Bose served the infringement report of its expert, Dr. Martin E. Kaliski ("Dr. Kaliski"), dated November 22, 2011.  Pl.'s Facts ¶ 23.  The Kaliski report does not allege infringement under the doctrine of equivalents.  Id. ¶ 24.  Bose and its expert now contend that the claimed "interface device" or "interface module" is present in the combination of any one of the accused products together with an iDevice.  Id. ¶ 25.

Bose alleges infringement of claims 35, and 37-42 against the defendants DPI, Imation, and Memorex.  Pl.'s Facts ¶ 2.  Bose and its expert contend that the digital-to-analog conversion that the patent requires takes place in the iDevice that can be

connected to all of the Defendants' products except the iW1 made by SDI.  Id. ¶ 26.  Bose and its expert contend that the control signal transmission of the interface device/module takes place in the Defendants' dock products (except the iW1), because they "contain[] 'circuitry that transmits digital control commands.'" Id. ¶ 28 (citing Kaliski Report ¶¶ 205, 326, 387, 440).

To demonstrate this, Bose has designated an "exemplar" product by defendant SDI, product iP9.  With respect to the exemplar SDI iP9 product, Dr. Kaliski opined as follows:

> The circuitry in the iP9 for transmitting digital control commands, together with the 30-pin connector, and also the DAC circuitry in the iDevice for converting a digital audio signal from the iDevice to an analog audio signal collectively constitute a structure that includes an interface, under the Court's constructions.  Stated another way, the "interface device" (claim 35) and "interface module" (claim 37) comprise the circuitry in the iP9 that transmits digital control commands, the 30-pin connector, and the DAC circuitry in the iDevice. The 30-pin connector, which is part of this structure operatively couples the iDevice to the iP9 and indeed is used to removably connect the iDevice to the iP9.

Id. ¶ 30.  Dr. Kaliski's analysis is the same for each of Defendants' products analyzed in his report, except the iW1.  Id. ¶ 31.  Bose submitted "a graphical representation of how the combination of one of the Defendants' accused products and an iDevice infringes the claim of the '765 patent."  Id. ¶ 32.



Id.  This picture shows that the iDevice "contains 'circuitry that converts a digital audio signal from an audio source to an analog audio signal (DAC).'" Id.  Bose does not allege that the accused device itself, or indeed, any of the Common Products, contain circuitry that converts a digital audio signal from an audio source to an audio analog signal.  As Bose effectively conceded in their memorandum, the Court's construction of the '765 patent requires a holding of no infringement by these Common Products.  As every claim of patent requires an interface, and none of the Common Products contain a digital-to-analog converter, those products cannot infringe the '765 patent.  No reasonable jury could find infringement by the Common Products, and the Court grants summary judgment to DPI, Imation, and SDI on all these accused devices.

Admittedly, the iW1 differs from the Common Products.[8] Although Bose's expert conceded that he did not open the iW1 enclosure to inspect the circuitry inside, the parties dispute whether the enclosure includes a digital-to-analog converter. Pl.'s Facts ¶¶ 33-34.  Dr. Kaliski infers that there must be a digital-to-analog converter inside the iW1 enclosure because the device audio inputs are digital, but the speakers produce sound from analog signals.  Kaliski Report ¶ 262; see Pl.'s Facts ¶ 33. Kaliski and Bose also argue that the iW1 contains circuitry that transmits digital control commands.  Kaliski Report ¶¶ 273-77. Thus, depending on a jury's findings, the iW1 may include an interface, and an interface unit, and thus may meet the limitations of independent claims 1 and 37.  Accordingly, this Court may not grant summary judgment based on its construction alone.

## C.  Specific Intent

The Defendants also request this Court grant summary judgment because Bose cannot prove the intent necessary for indirect infringement.[9]  Defs.' Mem. 14.  While intent is generally an issue of fact for juries, e.g., Moba, B.V. v.

---

[8] As to SDI's iW1 product, Bose is alleging infringement of claims 1-2, 13, 16-19, 21-23, 37-40, and 42.  Pl.'s Facts ¶ 4.

[9] Only one defendant, SDI, remains after the claim construction.  The only remaining count to be prosecuted by Bose in this case is for the iW1 product, which is covered by the '765 patent.

Diamond Automation, Inc., 325 F.3d 1306, 1318 (Fed. Cir. 2003),
if the undisputed facts demonstrate either that no reasonable
jury could find for Bose, or that the suit is void as matter of
law, summary judgment may be appropriate, e.g., Manville Sales
Corp. v. Paramount Systems, Inc., 917 F.2d 544, 554 (Fed. Cir.
1990).

"Indirect infringement, whether inducement to infringe or
contributory infringement, can only arise in the presence of
direct infringement, though the direct infringer is typically
someone other than the defendant accused of indirect
infringement." Dynacore Holdings Corp. v. U.S. Phillips Corp.,
363 F.3d 1263, 1272 (Fed. Cir. 2004).  Unlike direct
infringement, indirect infringement requires fault or intent by
the accused party.  The Supreme Court has recently addressed the
intent standard for both contributory infringement and
inducement.  In Global-Tech Appliances, Inc. v. SEB S.A., the
Court held that induced infringement under section 271(b) and
contributory infringement under section 271(c) have a similar
knowledge requirement.  131 S. Ct. 2060, 2068 (2011).  "However,
'knowledge of the acts alleged to constitute infringement' is not
enough." DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1305
(Fed. Cir. 2006) (quoting Warner-Lambert Co. v. Apotex Corp., 316
F.3d 1348, 1363 (Fed. Cir. 2003) (citation omitted)).

"Inducement requires a showing that the alleged inducer knew

22

of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009). "The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." DSU Medical Corp., 471 F.3d at 1304 (quoting Manville Sales, 917 F.2d at 554). "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." Vita-Mix, 581 F.3d at 1328. "[A]ctive inducement is . . . a factual inquiry." Moba, B.V., 325 F.3d at 1318 (remanding for factual determination).

In Aro Manufacturing Co. v. Convertible Top Replacement Co. ("Aro II"), the Supreme Court held that contributory infringement "required a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." 377 U.S. 476, 489 (1964). Although Aro II was a fractured majority, the Supreme Court put the issue to rest in Global-Tech, citing the principles of stare decisis while noting that "Aro II has become a fixture in the law of contributory infringement." Global-Tech, 131 S.Ct. at 2068 (quoting Moy's Walker on Patents § 15:20, p. 15-31 (4th ed. 2009)) ("Nor has Congress seen fit to alter § 271(c)'s intent requirement in the nearly half a century since Aro II was

decided."). In <u>Global-Tech</u>, the Supreme Court also rejected the Federal Circuit's "deliberate indifference standard" and applied the doctrine of willful blindness to contributory infringement claims, and by implication, inducement claims. <u>Id.</u> at 2068-69. This created a standard for intent where, at a minimum, "(1) the defendant must subjectively believe that there is a high probability that a [patent] exists and (2) the defendant must take deliberate actions to avoid learning of that fact." <u>Id.</u> at 2070. The Court also contrasted a willfully blind defendant with a reckless one, who "merely knows of a substantial and unjustified risk of" infringement. <u>Id.</u> Arguably, this intent standard makes patent prosecutions more difficult.[10] While contributory infringement and inducement are distinct statutory provisions, the analysis for intent is identical for the narrow questions remaining in this case. <u>See id.</u> at 2068.

SDI argues that the undisputed facts demonstrate that it cannot have the requisite specific intent, in particular because it sought the advice of counsel and successfully initiated a reexamination of the patent. Defs.' Mem. 15-16. Bose points to the presumption in <u>Grokster</u> that making and selling articles that are only adapted to be used in a patented combination will be

---

[10] It is worth noting that Bose brought this patent prosecution in 2009, two years before <u>Global-Tech</u>. The district judge to whom the case was first assigned stayed the case pending a reexamination of the patent. <u>Supra</u> at p. 2.

presumed to intend infringement.  Tr. Mot. Hr'g at 4:20-25, ECF

No. 274 (citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,

Ltd., 545 U.S. 913, 946 (2005)).  As this Court stated during the

oral argument on the motion, that presumption is a bursting

bubble presumption.  See Tr. Mot. Hr'g at 4:20-25.  It is true

that "[o]ne who has actual notice of another's patent rights has

an affirmative duty to respect those rights." Read Corp. v.

Portec, Inc., 970 F.2d 816, 828 (Fed. Cir. 1992) (citation

omitted), abrogated on other grounds by Markman v. Westview

Instruments, Inc., 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc).

"That affirmative duty normally entails obtaining advice of legal

counsel although the absence of such advice does not mandate a

finding of willfulness."  Id. (citing Kloster Speedsteel AB v.

Crucible, Inc., 793 F.2d 1565, 1579 (Fed. Cir. 1986) ("Though it

is an important consideration, not every failure to seek an

opinion of competent counsel will mandate an ultimate finding of

willfulness.")).[11]

SDI's arguments that Bose cannot show the requisite intent

are grounded in binding precedents.  For example, the Federal

---

[11] Continuing its seemingly irreversible trend of ousting the
American jury from the adjudication of patent cases, see e.g.,
Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344
F.3d 1359, 1367 (Fed. Cir. 2003), the Federal Circuit has
recently decided that the issue of wilfulness is now matter of
law for the court, subject to de novo appellate review, Bard
Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., --- F.3d
---, No. 10-1510, 2012 WL 2149495, at *2-3 (Fed. Cir. June 14.
2012).

Circuit has reversed liability for inducement "where corporate officers had a 'good faith belief' that the corporation's product did not infringe based on advice of counsel obtained after learning of the patent at issue."  See Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc., 104 F. App'x 721, 727 (Fed. Cir. 2004) (citing Manville Sales, 917 F.2d at 553 ("There is simply neither compelling evidence nor any findings that the officers had specific intent to cause another to infringe.")); see also Jason A. Rantanen, An Objective View of Fault in Patent Infringement, 60 Am. U. L. Rev. 1575, 1610 (2011) (discussing the difficulty of ascertaining the mens rea of a corporation, particularly in the complex technical area of patent law).

The leading case on the good faith advice of counsel immunizing accused infringers from suit is Manville Sales, 917 F.2d 544, where the court concluded that "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements."  Id. at 553.  Reliance on counsel's advice that an accused product does not infringe can be very powerful.  See Read Corp., 970 F.2d at 828-29 ("Those cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where opinion of counsel was either ignored or found to be incompetent."); accord Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1259 (Fed. Cir. 2005) (citing Read Corp., 970 F.2d at 828-29).

26

In line with these cases, the undisputed facts here show SDI's punctilious efforts upon being informed by Bose of potential infringement. Bose sent a letter dated December 10, 2008 to SDI stating that the '765 patent "applies" to several SDI iHome products. Pl.'s Facts ¶ 102. On March 26, 2009, SDI representatives met with Bose representatives. Id. ¶ 103. Bose argues that this undisputed fact is inadmissible as a communication in connection with settlement, and cites a September 8, 2009 letter where counsel agreed that any settlement discussions would be protected to the full extent of Federal Rule of Evidence 408 and Local Rule 16.4. Bose Corps. Mot. Strike Portions Reply Mem. SDI Techs., Inc. Supp. Mot. Stay, Ex. A, Sept. 28, 2009 E-MAIL, ECF No. 57-2. SDI apparently identified the Frank patent during their meeting. Pl.'s Facts ¶¶ 104-15. While there may have been protected communications, SDI's undisputed presentation of the Frank patent to Bose was merely a presentation of a legal position, not a settlement discussion. See Fed. R. Ev. 408. Presumably having failed to convince Bose that SDI's products did not infringe, SDI then commissioned and received a written opinion by Oram of Arent Fox LLP, dated May 22, 2009, on the subject of the validity of the patent. Pl.'s Facts ¶ 106. The legal opinion asserted that all claims of the '765 patent were invalid based on the combination of the Frank Patent and the Van Der Muelen patent. Bose disputes that SDI relied on this opinion, but it is undisputed that the Frank

Patent was subsequently combined with the Van Der Muelen patent
in a reexamination of the '765 patent to reject all of the claims
of the patent, along with two other rejections based on other
prior art.  Id. ¶¶ 108-09.  It matters not if SDI executives did
not personally read the Oram opinion that concluded that SDI's
products did not infringe.  Hockerson-Halberstadt, Inc., 104 F.
App'x at 727 (citing Manville Sales, 917 F.2d at 553 ("There is
simply neither compelling evidence nor any findings that the
officers had specific intent to cause another to infringe.")

When deposed, Bose damages expert Michael J. Dansky
("Dansky") did not dispute that SDI "had an invalidity opinion
and believed that the ['765] patent was invalid."[12]  Pl.'s Facts
¶ 53 (citing Decl. Benjamin R. Askew Supp. Defs.' Joint Mem.
Supp. Mot. Summ. J., Ex. R, Dep. Michael J. Dansky 334-37, ECF

---

[12] Dansky stated "I've come to realize that SDI had an
invalidity opinion, and so it didn't believe that it — that the
patent was going to be valid.  [Redacted under Fed. R. Evid.
408]."  Decl. Benjamin R. Askew Supp. Defs.' Joint Mem. Supp.
Mot. Summ. J., Ex. R, Dep. Michael J. Dansky 334, ECF No. 244-18.
Dansky was crystal clear about SDI's reliance on the invalidity
opinion in his deposition.

 Q: So in your view, SDI was willing to pay a million
   dollars and acknowledge the validity even though
   they thought the patent was a null?
 A: No. [Redacted], I believe they were not willing to
   admit validity of the patent.  I think it actually
   was quite the opposite.  They made it clear that
   they would not accept the validity of the patent or
   say anything about its validity, [redacted], and at
   the time they had an invalidity opinion and
   believed that the patent was invalid.

Id. at 335.  The Court recognizes that the redacted portions
above are inadmissible under Federal Rule of Evidence 408 and
draws no inferences from them.

No. 244-18).  Here, SDI did what any noninfringing defender would do, and they need not be subjected to the cost and effort of a trial.  Cf. Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1320 (Fed. Cir. 2009) (noting that invalid patents cannot give rise to infringement) (quoting Medtronic, Inc. v. Cardiac Pacemakers, Inc., 721 F.2d 1563, 1583 (Fed. Cir. 1983)).  This Court concludes that Bose cannot prove the specific intent necessary to proceed to trial on contributory infringement or inducement.  Bose has not shown that SDI knew that the iW1 product infringed the '765 patent.  It is undisputed that SDI had an invalidity opinion, and a Bose expert agreed that SDI believed the invalidity opinion.  Nor does Bose allege that SDI was willfully blind to the '765 patent or potential infringement.  Given this record, no reasonable jury could conclude that SDI had the requisite intent, and this Court ought grant summary judgment for SDI.

### III. CONCLUSION

The Court therefore GRANTS the defendants SDI, Imation, DPI, and Memorex's motion for summary judgment, ECF No. 239, not on the ground that the '765 patent is invalid - that is a matter for the patent reexamination proceedings - but on the ground that, given the Court's construction, there is no infringement of one hundred forty-three of the one hundred forty-four challenged products and that, as to the one hundred forty-fourth, no reasonable jury could find SDI had the intent necessary to

support a finding of inducement or contributory infringement.
The Court thus need not, and does not reach the issue of the
priority date of the '765 patent.

     **SO ORDERED.**


                        /s/ William G. Young
                       WILLIAM G. YOUNG
                       DISTRICT JUDGE